IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| THERESA BRADLEY | § | |
| | § | |
| v. | § | CASE NO. 4:11-cv-713 |
| | § | |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY ADMINISTRATION | § | |

**MEMORANDUM OPINION AND ORDER OF**
**UNITED STATES MAGISTRATE JUDGE**

The Plaintiff brings this appeal under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner denying his claim for Disability Insurance Benefits ("DIB"). After carefully reviewing the briefs submitted by the parties, as well as the evidence contained in the administrative record, the Court finds that the Commissioner's decision should be **AFFIRMED.**

**HISTORY OF THE CASE**

Plaintiff protectively filed an application for Supplemental Security Income disability benefits under Title XVI of the Social Security Act on June 11, 2003, claiming entitlement to disability benefits due to fibromyalgia, herniated disk, degenerative disk disease, and rheumatoid arthritis. Plaintiff's application was denied initially and on reconsideration. Pursuant to Plaintiff's request, a hearing was held before an Administrative Law Judge (ALJ) in Panama City, Florida on December 9, 2005. Plaintiff testified at the hearing and was represented by counsel at the proceeding.

On February 24, 2006, the ALJ denied Plaintiff's claim, finding Plaintiff "not disabled." Plaintiff appealed to the Northern District Court of Florida, and on September 5, 2007 the court remanded the case for further administrative proceedings. On November 19, 2007, pursuant to the order of the District Court, the Appeals Council remanded the case to an ALJ. On January 21, 2009 a hearing was held before an ALJ in Dallas, Texas. Plaintiff was represented by counsel at the

1

proceeding. At the hearing, Plaintiff testified. On May 18, 2009, the ALJ found Plaintiff "not disabled" and denied the claim. Plaintiff requested Appeals Council review, which the Appeals Council denied on September 14, 2011. Therefore, the May 18, 2009 decision of the ALJ became the final decision of the Commissioner for purposes of judicial review under 42 U.S.C. § 405(g). *See* 20 C.F.R. § 404.981 (2005).

## **ADMINISTRATIVE LAW JUDGE'S FINDINGS**

After considering the record, the ALJ made the prescribed sequential evaluation. The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2007.

2. The claimant has not engaged in substantial gainful activity since June 17, 2003, the alleged onset date (20 C.F.R. 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: musculoskeletal disorders and fibromyalgia (20 C.F.R. 404.1520(c) and 416.920(c)). Her mental impairment is considered to be non severe.

4. The claimant does not have an impairment or combination of impairments that meets of medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1525, 404.1526, 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(b) and 416.967(b). The claimant can stand/walk for up to two hours a day.

6. The claimant is unable (sic) to perform any past relevant work (20 C.F.R. 404.1565 and 416.965). (The ALJ clarified that the claimant is able perform past work as a desk clerk in a motel- no error is assigned to the misstatement.)

    7.    The claimant has not been under a disability, as defined in the Social Security Act, from October 1, 2002, through the date of this decision (20 C.F.R. 404.1520(g) and 416.920(g)).

(TR 4I-4P).

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision of no disability is limited to two inquiries: whether the decision is supported by substantial evidence in the record, and whether the proper legal standards were used in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). If supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* at 401. The Court may not reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The Court is not to substitute its judgment for that of the Commissioner, and reversal is permitted only "where there is a conspicuous absence of credible choices or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

The legal standard for determining disability under Titles II and XVI of the Act is whether the claimant is unable to perform substantial gainful activity for at least twelve months because of a medically determinable impairment. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *see also Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). In determining a capability to perform "substantial gainful activity," a five-step "sequential evaluation" is used, as described below.

## **SEQUENTIAL EVALUATION PROCESS**

Pursuant to the statutory provisions governing disability determinations, the Commissioner has promulgated regulations that establish a five-step process to determine whether a claimant suffers from a disability. 20 C.F.R. § 404.1520 (1987). First, a claimant who, at the time of his disability claim, is engaged in substantial gainful employment is not disabled. 20 C.F.R. § 404.1520(b) (1987). Second, the claimant is not disabled if his alleged impairment is not severe, without consideration of his residual functional capacity, age, education, or work experience. 20 C.F.R. § 404.1520(c) (1987). Third, if the alleged impairment is severe, the claimant is considered disabled if his impairment corresponds to an impairment described in 20 C.F.R., Subpart P, Appendix 1 (1987). 20 C.F.R. § 404.1520(d) (1987). Fourth, a claimant with a severe impairment that does not correspond to a listed impairment is not considered to be disabled if he is capable of performing his past work. 20 C.F.R. § 404.1520(e) (1987).

At the fifth step, it must be determined whether claimant could perform some work in the national economy. A claimant who cannot return to his past work is not disabled if he has the residual functional capacity to engage in work available in the national economy. 20 C.F.R. § 404.1529(f) (1987); 42 U.S.C. § 1382(a).

At this juncture, the burden shifts to the Commissioner to show that there are jobs existing in the national economy which Plaintiff can perform, consistent with his medically determinable impairments, functional limitations, age, education, and work experience. *See Bowen v. Yuckert*, 482 U.S. 137 (1987). Once the Commissioner finds that jobs in the national economy are available to the claimant, the burden of proof shifts back to the claimant to rebut this finding. *See Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990).

In this case, a determination was made at the **Fourth** step.

## ANALYSIS

Plaintiff raises three issues: (1) whether the ALJ properly determined that Plaintiff's mental impairments were not severe; (2) whether the ALJ erred in assessing the severity of Plaintiff's chronic pain in combination with Plaintiff's impairments; and (3) whether the ALJ's rejection of the examining physician's opinion was not sufficiently supported by evidence.

### Plaintiff's Mental Impairments

The ALJ found that Plaintiff's mental impairment was not severe. Citing to *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985), he finds that Plaintiff's mental condition does not cause more than mild limitations in her activities, functioning, or concentration. He finds no episodes of decompensation. The ALJ primarily relies on three State Agency evaluations.

Although ALJs are not bound by any findings made by State agency medical consultants, they must consider such findings as opinion evidence. 20 C.F.R. §§ 404.1527(f)(2)(I) & 416.927(f)(2)(I). ALJs may not ignore these opinions and must explain the weight given to the opinions in their decisions. 20 C.F.R. § 404.1527(f) (2)(ii). As to one of the consultative doctors, Dr. Hord, the ALJ cites to the report indicating that Plaintiff prepares meals, drives, does laundry and other housework and can follow simple one or two step instructions. The doctor indicated that he did not know how Plaintiff would deal with stress. He assigned Plaintiff a GAF score of 50. The ALJ rejected the doctor's latter statements finding that they were inconsistent with the evidence as a whole.

Plaintiff takes issue with the ALJ's assessment stating that the record contains several examining opinions indicating a severe mental impairment affecting her ability to work. Plaintiff cites to the consultative exam performed by Dr. Warriner (TR 207). Although his report simply restates what Plaintiff has told him, he does note that her mental functioning is normal. He notes that she has never suffered from any psychotic disorders. Her main problem, he states, is her chronic

5

pain which she self reports. The ALJ finds that this diagnosis is basically one based on her complaints. The ALJ gave his reasons for rejecting this report, which in regard to Plaintiff's condition, did not shed much light on what she could or could not do. As for the assessed low GAF score, federal courts have declined to find such a strong correlation between an individual's GAF score and the ability or inability to work. *See* 65 Fed. Reg. 50746, 50764–65 (Aug. 21, 2000) (Commissioner declines to endorse the GAF scale for use in Social Security and SSI disability programs, and states that the GAF scale "does not have a direct correlation to the severity requirements in our mental disorders listings"). *See, e.g., Kennedy v. Astrue,* 247 F. App'x 761, 766 (6th Cir. 2007); *Wind v. Barnhart,* 133 F. App'x 684, 692 n. 5 (11th Cir. 2005).

Plaintiff also notes that she was assessed by Dr. Weiner on admission to the ER after a suicide attempt. Her GAF was 49 on admission and 50-55 on discharge. Yet, in the ER, Plaintiff denied that she had attempted suicide (TR 381). Her mood on discharge was much improved. She also denied any previous bouts with depression (TR 383).

An exam performed one year after her admission to the hospital notes that her work-related mental activities are normal. The doctor notes that she can sit, stand, and drive. Agency examiners assessed her mental condition impairment one year after her hospitalization as not severe (TR 418). The Court finds in reviewing the medical record as a whole that there was substantial evidence to support the ALJ's decision. Plaintiff's first point of error is overruled.

**Plaintiff's Chronic Pain**

The ALJ did not err in assessing Plaintiff's combination of impairments and credibility when evaluating her chronic pain. To make a disability determination, an ALJ must consider whether a claimant's impairments or combination of impairments are severe. 42 U.S.C. § 1382c; 20 C.F.R. § 404.1520(a); *see Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985). "[A]n 'impairment' is

6

an abnormality that can be shown by medically acceptable clinical and laboratory diagnostic techniques, and in fact must be established by medical evidence as opposed to the claimant's subjective statement of symptoms." *Prince v. Barnhart*, 418 F.Supp.2d 863, 867 (E.D. Tex. 2005). Such an impairment "can be considered as not severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Stone*, 752 F.2d at 1101 (quoting *Estran v. Heckler*, 745 F.2d 340, 340-41 (5th Cir. 1984)) (citations omitted). If the ALJ finds an impairment to be severe, the impairment must be considered throughout the disability determination process. 20 C.F.R. § 404.1523.

Courts have held that an ALJ must acknowledge and consider potential impairments if their existence is manifested in the record. *See Mahoney v. Astrue*, 2009 WL 3097334 (N.D. Tex. 2009). In *Mahoney*, for example, the court found that the ALJ erred by failing to consider or acknowledge the claimant's chronic pain syndrome. *Id*. at *8. There, the ALJ should have considered the effect of the claimant's chronic pain syndrome even though the claimant "did not specifically allege chronic pain syndrome as an impairment," because the facts were enough "to alert the ALJ to the existence of the chronic pain syndrome." *Id.* at *9. Finally, the court determined that the ALJ's failure to acknowledge and consider the claimant's syndrome was reversible error because it should have been considered throughout the disability determination process. *Id.* at *10.

In this case, the ALJ properly discussed Plaintiff's pain when determining severity. Unlike the ALJ in *Mahoney*, the ALJ here considered Plaintiff's pain. *Cf.* 2009 WL 3097334 at *8. In fact, the ALJ noted that "one primary basis of which disability is alleged is disabling pain" (TR 4N). After examining Plaintiff's alleged pain, the ALJ concluded that "[t]he objective record does not describe disabling pain" (TR. 4O). Because the ALJ did, in fact, acknowledge Plaintiff's alleged

7

chronic pain, this case is distinguishable from *Mahoney* and does not constitute a legal error.

Plaintiff argues that substantial evidence does not support the ALJ's decision. To support her argument, Plaintiff cites reports from four doctors discussing chronic pain: Dr. Warriner, Dr. Weiner, Dr. Heap and Dr. Aboulela (Dkt. 11 at 7).

Dr. Warriner diagnosed Plaintiff with chronic pain disorder based on how she "describ[ed] pain throughout her body and especially in the low back area" (TR 207-8). Notably, however, Dr. Warriner is not a medical doctor. Dr. Warriner is a psychologist who evaluated Plaintiff's depression symptoms based on a single examination relying on her subjective reports. *Id.* Accordingly, the ALJ had the discretion to disregard Dr. Warriner's opinion.

Dr. Weiner's mention of chronic pain in the discharge diagnosis was not inconsistent with the non-examining physicians' opinions because she did not focus on Plaintiff's complaint as to pain (TR 381). Dr. Weiner examined Plaintiff after the suicide attempt and was primarily concerned with whether Plaintiff had depression (TR 381). Dr. Weiner merely noted Plaintiff's reports of chronic pain. *Id.* Thus, the ALJ was not required to rely on Dr. Weiner's opinion of chronic pain because Dr. Weiner did not focus on examining Plaintiff's chronic pain.

Dr. Heap's diagnosis of Plaintiff's chronic pain does not support a finding that it is severe (TR 404-05). Dr. Heap examined Plaintiff in 2000 for back pain (TR 404). Plaintiff had come in complaining of back pain numerous times and had been referred to Dr. Stinger and Dr. England, but she followed up with neither of them. *Id.* Dr. Heap's examination discovered that she had full range of motion, normal strength, and no weakness. *Id.* Dr. Heap even concluded that he did "not believe that further work up [was] needed" (TR 405). Accordingly, Dr. Heap's report, if anything, suggests that Plaintiff's pain was not a severe impairment.

Finally, Dr. Aboulela's report was not inconsistent with the non-examining physicians. Dr. Aboulela performed a disability evaluation on Plaintiff (TR 412). While Plaintiff claims this evaluation shows a link between Plaintiff's chronic pain and her limitations, the only statements in the report about Plaintiff's chronic pain are her subjective complaints or her self-reported history. *Id.* Dr. Aboulela's only opinions were her "impression" of chronic pain and that Plaintiff's physical capabilities were mostly normal. *Id.* It is important to note that the ALJ was not required to regard Plaintiff's reports to her doctors as the equivalent of her doctors' medical opinions of her condition. As such, the ALJ properly determined that Dr. Aboulela's report was not inconsistent.

In sum, each report relied on is based on Plaintiff's subjective complaints, not any medical determinations. Additionally, the record contains a number of examiners who did not diagnose Plaintiff with chronic pain syndrome (Dkt. 10 at 8-9; *see* TR 411, 165-68, 191-93, 230-31, 232-46, 477-93). Therefore, it was not improper for the ALJ to consider Plaintiff's lack of credibility when determining the existence or severity of her chronic pain.

The ALJ's credibility determination is entitled to great deference. *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000).[1] As noted, the ALJ found that her fibromyalgia was severe. However, it was not as limiting as asserted by the Plaintiff. A claimant's testimony of pain is insufficient to establish disability. *See* 42 U.S.C. § 423(d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability."). The ALJ's assessment of the disabling nature of a claimant's pain is due considerable deference. *Chambliss v. Massanari,* 269 F.3d 520, 522 (5th Cir. 2001). The Court declines to reverse the ALJ's finding that Plaintiff's chronic pain was not severe. Plaintiff's second point of error is overruled.

---

[1] The record reflects Plaintiff's repeated inconsistences. For example, Plaintiff once reported to Dr. Warriner that "[s]he does not smoke," (TR 207), but two years later she reported that "[s]he smokes about two packs per day for more than 30 years" TR 413.

9

**The ALJ's Rejection of Dr. Jones**

The ALJ committed no error by rejecting the opinion of the consultant examining physician, Dr. Jones. As Plaintiff points out, both regulations and the Fifth Circuit favor the opinions of examining physicians over the opinions of non-examining consultants. *See* 20 C.F.R. § 404.1527(d)(1); *Villa*, 895 F.2d at 1024. However, the Fifth Circuit has also recognized that, "when good cause is shown, less weight, little weight, or even no weight may be given to the physician's testimony." *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994).

Courts acknowledge that an ALJ has the discretion to disregard a treating physician's statements where they are brief and conclusory, not supported by acceptable diagnostic techniques, or otherwise unsupported by the evidence. *Id.* In *Greenspan*, the Fifth Circuit held that an ALJ's decision to disregard the treating physician's conclusion was legally and factually appropriate when the physician's conclusion was contradicted by outside medical evidence as well as the physician's own report. 38 F.3d at 237. There, the court noted that the ALJ had not applied a wrong legal standard because "[w]hile we [the court] might not have accorded 'no weight' to the opinions of the treating physicians, the Act empowers the ALJ to analyze the physician's testimony." *Id.* Likewise, substantial evidence supported the ALJ's decision because the physician used few recognized medical techniques, had performed limited clinical testing, did not personally observe the claimant's symptoms, and was further contradicted by outside opinions. *Id.* at 237-38.

Here, the ALJ acted within his discretion to disregard the testimony of Dr. Jones. The ALJ discussed Dr. Jones's opinion, stating that, "she can sit for a total of five hours, can stand for one hour, and can walk for twenty minutes is inconsistent with the text of the report and is rejected" (TR 4M, ¶ 2). After discussing Dr. Jones's opinion, the ALJ dismissed it as inconsistent with the record. *Id.* Similar to *Greenspan*, there was no legal error here because the ALJ is empowered by the Act

to make determinations of the physician's testimony. *See* 38 F.3d at 237.

Accordingly, the Court now turns to whether the ALJ's decision is supported by substantial evidence and determines that it is. Plaintiff claims that the ALJ "cites no specific treating or examining opinion that contradicts the limitations assessed by Dr. Jones" (Dkt. 11 at 9). This claim is incorrect. In fact, the ALJ cited Dr. Jones's own report to contradict his conclusion (TR 4M). Dr. Jones's report stated that Plaintiff's walking was normal, her sensory exam was normal, and there was no atrophy of the hands or feet (TR 4M). Even Dr. Jones's clinical test results contradict his assessment (TR 494-96). As Dr. Jones noted, her straight leg raising was negative. She could move and lift objects. The ALJ also cited to other providers' records that Plaintiff was able to move, stand, lift objects up to twenty pounds, had no joint deformities, and had no loss of motion (TR 4M). For example, he noted that Dr. Gilani reported that his examination of her spine was normal. Dr. Lewandowski reported that there was no swelling, tenderness or deformity of the joints (TR 4M). Thus, the record supports the ALJ's decision to partially disregard Dr. Jones's statement based on conflicting evidence. Dr. Jones, like most of Plaintiff's doctors, examined her only once. The ALJ is free to reject the opinion of any expert when the evidence supports a contrary conclusion. *Newton*, 209 F.3d at 455 (citing *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994). Therefore, Plaintiff's third point of error is overruled.

Pursuant to the foregoing, the decision of the Administrative Law Judge is **AFFIRMED.**

**SO ORDERED.**

SIGNED this 28th day of March, 2013.

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE

11